# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **ADRIAN NATHANIEL BACON,** ) | |
| ) | |
| Plaintiff, ) | Case No. 7:18cv00262 |
| ) | |
| v. ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| ) | |
| **J. CURRY,** ) | By: Pamela Meade Sargent |
| ) | United States Magistrate Judge |
| Defendant. ) | |

The pro se plaintiff, Adrian Nathaniel Bacon, is a Virginia Department of Corrections, ("VDOC"), inmate housed at Wallens Ridge State Prison, ("Wallens Ridge"). Bacon sues Correctional Officer J. Curry claiming that Curry kicked his cell's tray slot door closed on his arm approximately four times and sprayed him with pepper spray on May 17, 2018. By Opinion and Order entered June 10, 2019, the Honorable James P. Jones, District Judge, found that Bacon had not exhausted his administrative remedies prior to filing suit, but he referred the matter to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) to conduct an evidentiary hearing to determine whether the established grievance procedures were available to Bacon. An evidentiary hearing was conducted before the undersigned on August 1, 2019. The undersigned now submits the following report and recommended disposition.

*I. Facts and Procedural Background*

Bacon brings this civil rights action pursuant to 42 U.S.C. § 1983 for violation of his Eighth Amendment right to be free from cruel and unusual punishment against

Curry. At the evidentiary hearing, Bacon testified that he was being housed at Wallens Ridge on May 17, 2018, when Curry closed his cell's tray slot door on his arm four times and "gassed" him with pepper spray. Bacon said that he filed an Informal Complaint regarding Curry's actions the same day. On this Informal Complaint, Bacon wrote:

> On 17 May 2018 while housed in D-631 at appx. 5 pm while talking to multiple [correctional officers] through the tray slot … Curry started kicking the tray slot close[d] on my arm multiple times then proceeded to spray me with gas utilizing excessive force for the malicious, sadistic and wanton purposes to cause harm/serious injuries. Furthermore, I'm an [asthmatic] and he got no medical approval to gas me this officer violated my constitutional right.

(Docket Item No. 13-1 at 19.) This Informal Complaint is dated May 17, 2018. It also contains the notation that it was received on May 21, 2018, and was assigned to Unit Manager D. Collins to respond. There is no response, however, because Bacon signed the section stating that he wished to withdrawal this Informal Complaint. His signature is dated May 31, 2018. The Informal Complaint also contains the signature of Lieutenant Fleming, as staff witness, and also is dated May 31, 2018.

Bacon testified that on May 25, 2018, he was taken from the Hearings Office to an individual office across from medical in the D5 pod. He said that Major Anderson, Collins, Harris, Hall, Sluss and Intelligence Officers Light and Fleming were present in the office.[1]  Bacon said that Fleming attempted to get him to withdraw the Informal Complaint he filed against Curry, but he refused to do so. Bacon said that he was moved from cell D-631 to segregation housing in cell D-508

---

[1] Bacon identified these Wallens Ridge staff members by last name only.

after the incident on May 17, 2018. Bacon said that Collins was the Unit Manager of D5 building, which contained segregation housing.

Bacon testified that, during this meeting, "they" continuously told him that "they" controlled when an inmate was released from segregation housing. Bacon said that Fleming told him that all he had to do was to say that there was no bed space available in general population. He said the meeting lasted 30 to 45 minutes. Bacon admitted that no one threatened him with any physical harm. He said that he does not recall any other statements made by any of the VDOC employees other than threatening that he would continue to be held in segregation if he did not withdraw his Informal Complaint.

Bacon said that, while his Informal Complaint against Curry was still pending, he was released from segregation and assigned to cell C-633 on May 31, 2018. After he was moved from segregation on May 31, Bacon said, he received a call on his cell intercom telling him that he had legal mail and to come to the investigator's office. Bacon said that he went to the investigator's office and found Fleming, Harris and Light were waiting for him. He said that he had not received any legal mail, but Fleming sat him down and told him that he would be placed back in segregation housing if he did not withdraw his Informal Complaint against Curry.

Bacon admitted that he signed the Informal Complaint section withdrawing his complaint against Curry during this meeting on May 31, 2018. He also stated that when signing the withdrawal section, he signed his middle name as "Duress" to indicate that he did not want to withdraw his complaint. Bacon's signature on this section of the Informal Complaint is not legible to the court. (Docket Item No. 13-1 at 19.)

Bacon testified that he filed Informal Complaints about being pressured on May 25 and 30 to withdraw his Informal Complaint regarding Curry's actions. He said that he filed these complaints by placing them in the prison's internal mail system, but he never received a receipt showing that either of these Informal Complaints were received by the Grievance Department. Bacon said there was no way for him to keep a copy of these Informal Complaints. He conceded on cross-examination that he did not file any Regular Grievances regarding these meetings because he did not have a copy of the Informal Complaints he filed to attach as required.

Bacon also said that, on June 3 or 4, 2018, he attempted to file a Regular Grievance based on Curry's use of excessive force, and he attached the Informal Complaint that he had withdrawn. He said that he did not keep a copy of this Regular Grievance, and he never received any response to it. He admitted on cross-examination that he did not appeal this Regular Grievance to the next level when he did not receive a response. Bacon said that he had requested video recordings from the D5 pod on May 25, 2018, to show that he was taken to the office for a meeting that day. He also said that the pod logbooks for the D5 pod on May 25, 2018, should show the movement of prison personnel to the meeting that day.

Brenda Ravizee, the Institutional Ombudsman at Wallens Ridge, also testified at the evidentiary hearing. As Institutional Ombudsman, Ravizee said that she was responsible for logging all Informal Complaints and Regular Grievances received from inmates. Ravizee testified that, when the Grievance Department received an Informal Complaint or Regular Grievance from an inmate, she or her assistants would log them into the VDOC's CORIS data system. She would then forward the

complaint or grievance to staff to answer. She said that she would receive the staff response and log it into the CORIS system and then return the complaint or grievance containing the response to the inmate. Ravizee testified that she received all requests for administrative remedies filed with the Grievance Department. She said that she sorted through this institutional mail and gave the Informal Complaints to her assistants to log and forward to staff. Ravizee said that she handled all Regular Grievances filed.

Ravizee said that she had reviewed Bacon's institutional grievance record, and it showed that Bacon had filed an Informal Complaint logged as WRSP-18-INF-01192 complaining of the use of excessive force against him by Curry. Ravizee said that she logged the Informal Complaint, assigned it a number and forwarded it to the party who should respond to it. Ravizee testified that she received this Informal Complaint again after Bacon withdrew it on May 31, 2018. She said that she logged Bacon's withdrawal and returned the complaint form to Bacon.

Ravizee testified that Bacon had filed an additional Informal Complaint against Curry, which she had received on May 24, 2018, logged in as WRSP-18-INF-01275 and sent to staff to respond. Ravizee said that Bacon also withdrew this complaint on May 31, 2018. She said that she logged his withdrawal of this complaint and returned it to Bacon, also.

Ravizee further testified that Bacon had filed several other Informal Complaints and Regular Grievances around that same time period. Ravizee testified that the Offender Grievance Report admitted into evidence as Plaintiff's Exhibit No. 1 showed all requests for administrative remedies filed by Bacon from May 1 to October 15, 2018. (Docket Item No. 25-1.) This Report shows that Bacon filed an

Informal Complaint regarding a property issue on May 15, 2018. The Report also shows that Bacon filed three Informal Complaints on May 21, 2018. One of these complaints alleged sexual harassment; one alleged a problem with Bacon's Common Fare meal tray, and the other was his complaint regarding Curry's alleged use of force on May 17, 2018. The Report shows that that Bacon filed two Informal Complaints on May 24, 2018.  One of these alleged a problem with his Common Fare diet, and the other was the second Informal Complaint he filed against Curry, alleging Curry had placed a false disciplinary charge against him on May 17, 2018. The report shows that Bacon filed a Regular Grievance on May 25, 2018, regarding the sexual harassment allegations contained in an Informal Complaint he filed on May 21, 2018. He also filed an Informal Complaint on May 29, 2018, alleging he was denied a shower.  The report shows that Bacon filed no further Informal Complaints or Regular Grievances until he filed an Informal Complaint on July 30, 2018, regarding recreation.

Ravizee stated that the Report showed that, during the time period covered by the Report, Bacon did not withdraw any of his requests for administrative remedies other than the two Informal Complaints he filed against Curry in May 2018. Ravizee testified that she never received any Regular Grievance from Bacon regarding his allegations that Curry used excessive force against him on May 17, 2018. Ravizee said that, if she had received a Regular Grievance on an Informal Complaint that had been withdrawn, she would have rejected it at intake.  She also testified that she received no Emergency Grievances from Bacon alleging that he had been threatened by staff; nor had she received any request forms from Bacon complaining that he had filed Informal Complaints or Regular Grievances for which he had not received responses.

Wallens Ridge Institutional Investigator Kenneth Fleming also testified at the evidentiary hearing. Fleming said that, in his role as Institutional Investigator, he would, on occasion, respond to Informal Complaints filed by inmates. When he was asked to do so, he said that he would talk to the inmate and the building supervisor to try to determine what had occurred. Fleming testified that, in an effort to investigate the allegations contained in Bacon's Informal Complaints, he had met with Bacon on two occasions in May 2018. Fleming said that the first meeting with Bacon occurred in Fleming's office on May 25, 2018. He said that Unit Manager Collins and Major Anderson also were present for this meeting and that the other institutional investigator may have been present, also. Fleming said that he told Bacon that, based on his review of the video evidence and the statements of the officers involved, he had determined that Curry had not used excessive force on him on May 17, 2018. Fleming admitted that he had not spoken to Bacon concerning his allegations until this meeting.

Fleming said that he met with Bacon again on May 31, 2018, after Bacon had been returned to general population housing. He said that he asked Bacon to come to his office to speak to him. He said that it would not be unusual to tell an offender that he had legal mail in an effort to get the offender to come to his office to speak with the offender. He said that this was done to protect the offender against other offenders knowing he was speaking with prison authorities. Fleming said that, on this occasion, he did ask Bacon if he wanted to withdraw his complaint. He said that he told Bacon that the video recordings showed no use of excessive force by Curry and, if he had to answer Bacon's complaint, that would be his response. He said that he did not threaten, and that no one else threatened, that Bacon would be returned to segregation housing if he failed to withdraw his complaint.

Fleming testified that he often would meet with an offender to tell the offender about his preliminary findings based on his investigations of a complaint and, if he had determined the complaint to be unfounded, he would ask the offender if the offender wanted to withdraw the complaint. Fleming said that, as an Institutional Investigator, he was not allowed to put offenders in segregation housing based on a refusal to withdraw a complaint. Fleming said that, while he might participate as a witness at an Institutional Classification Authority, ("ICA"), hearing to determine an offender's housing status or answer questions from the ICA, he did not function as an ICA and did not have the authority to place an inmate in segregation housing.

Fleming said that he did not receive any request to preserve any video recordings from the D5 pod on May 25, 2018. He said that the first time that he received any notice that there was any need for these video recordings was when he received a copy of the subpoena for the video recordings issued by this court in July 2019. Fleming stated that the video surveillance systems routinely recorded over previous recordings after several months, if the recordings were not downloaded and preserved. On cross-examination, Fleming said that the length of time a video record was available to be reviewed and preserved varied by camera, but, at most, the video recordings existed for four months. Fleming said that he did obtain and preserve the video recordings of the May 17, 2018, incident involving Curry. He said that he did not obtain and preserve any video recordings from the D5 pod for May 25, 2018, because he did not know there was any need for these recordings. Fleming said that he did not learn of this lawsuit until he was asked to provide an affidavit for the court in November 2018.

Fleming stated that it was easier for prison officials to keep offenders in general population housing than in segregation housing. He said that prison officials

receive fewer complaints from inmates housed in general population than those housed in segregation.

David Anderson, Assistant Warden at Wallens Ridge, testified that he was the Chief of Security at Wallens Ridge in May 2018. As the Chief of Security, Anderson said that he participated in the May 25, 2018, meeting with Bacon, along with Unit Manager Collins and Investigator Fleming and possibly others. Anderson said that he was an observer at this meeting. He said that he did not tell Bacon that he would hold him in segregation if he did not withdraw his complaints, and no one else told Bacon this, either. He said that he was not present for Fleming's May 31, 2018, meeting with Bacon.

Anderson said that, as Chief of Security, he usually was chair of the ICA hearings conducted at Wallens Ridge. He said that no one at Wallens Ridge asked him to keep Bacon in segregation because he had filed or was refusing to withdraw a complaint against a correctional officer. Anderson said, "I would not have allowed it."

Dennis Collins, Chief of Housing and Programs at Wallens Ridge, testified that he was the Unit Manager of the D Building at Wallens Ridge in May 2018. As Unit Manager, he said that he oversaw the operations of the D Building. Collins said that he met with Bacon, Fleming, Anderson and possibly the other institutional investigator on May 25, 2018, to discuss the May 17, 2018, incident between Bacon and Curry. Collins said that, as Unit Manager, he frequently met with offenders regarding their complaints. Collins testified that he did not tell Bacon that he would leave him in segregation if he did not withdraw his complaints against Curry, and no one else told him that, either. He said that Bacon's assignment to segregation

housing was never based on his filing of a complaint or his refusal to withdraw a complaint. Collins also stated that he was not present for Fleming's May 31, 2018, meeting with Bacon.

On cross-examination, Collins admitted that, as Unit Manager, he participated in the ICA hearings regarding offender housing status, but he said that the ICA was chaired by Anderson in May 2018, who had the final decision as to an offender's housing status. Collins admitted that, as Unit Manager, he had input in the decisions made by the ICA, but he said that he never recommended that Bacon stay in segregation because he had filed a complaint or refused to withdraw a complaint.

## II. Analysis

The Prison Litigation Reform Act of 1995, ("PLRA"), requires a prisoner to exhaust any available administrative remedies before challenging prison conditions in federal court. *See* 42 U.S.C.A. § 1997e(a) (West 2012). It provides as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a). Exhaustion is mandatory under § 1997e(a), and courts have no discretion to waive the requirement. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "[F]ailure to exhaust is an affirmative defense under the PLRA" and, therefore, must be both pled and proven by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007). A prisoner must exhaust administrative remedies even where the relief sought, such as monetary damages, cannot be granted by the administrative process. *See Woodford*, 548 U.S. at 85 (citing *Booth*, 532 U.S.

at 734). The Supreme Court has instructed that the PLRA "requires proper exhaustion." *Woodford*, 548 U.S. at 93. Proper exhaustion of administrative remedies for PLRA purposes means using all steps that the agency holds out, and doing so properly, so that the agency addresses the issues on the merits. *See Woodford*, 548 U.S. at 90.

There is no dispute in this case that Bacon did not fully exhaust his administrative remedies regarding his excessive force claim against Curry, and the court has so found. The issue currently before the court is whether the prison's established grievance procedures were available to Bacon. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process …, the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Officers' actions that prevent an inmate's use of a grievance procedure, including threats against the inmate, may be sufficient to show that the grievance procedure was unavailable to the inmate. *See Ross v. Blake*, 136 S.Ct. 1850, 1860 (2016).

Based on the evidence before the court, the undersigned finds that the established grievance procedure at Wallens Ridge was available to Bacon at the time he was required to exhaust his administrative remedies on his excessive force claim against Curry. Bacon testified that, around this time period, he filed several requests for administrative remedies, to which he received no response. To the contrary, the documentary evidence before the court -- Bacon's Offender Grievance Report -- showed that several requests were received from Bacon around this period of time, properly logged and responses returned. This Report does not show that Bacon ever

filed a Regular Grievance concerning his allegation of the use of excessive force by Curry on May 17, 2018, and Ravizee testified that he did not. Furthermore, Ravizee stated that, if Bacon had filed a Regular Grievance on this issue, she would have rejected it at intake because he had withdrawn his Informal Complaint. Also, Bacon admitted that he did not seek any further review of this Regular Grievance as permitted, and required, by the Grievance Procedure when he did not receive any response to it. He also did not offer any evidence that any Wallens Ridge staff member prevented him from doing so.

Regarding Bacon's allegations that he was prevented from exhausting his administrative remedies on his claim against Curry by the threats of various Wallens Ridge staff members, I find Bacon's testimony on this issue not credible. Bacon claimed that he withdrew his Informal Complaint against Curry based on staff threats to leave him in segregation housing if he refused. Bacon claimed that these threats were made at two separate meetings with Institutional Investigator Fleming on May 25 and May 31, 2018. Regarding the May 25 meeting, Bacon testified vaguely that "they" threatened to leave him in segregation housing if he did not withdraw his complaint against Curry. To the contrary, every other person who attended this meeting and testified – Fleming, Collins and Anderson – all stated that no one made any threats to Bacon to keep him in segregation housing. Also, Bacon admitted that he was returned to general population housing on May 31, 2018, while his Informal Complaint against Curry was still pending. Regarding the May 31 meeting, Bacon claimed that Fleming told him that he would be returned to segregation housing if he did not withdraw his Informal Complaint against Curry. Fleming denies making this threat. In addition, three of the defense witnesses – Fleming, Collins and Anderson – testified that, as Institutional Investigator, Fleming did not have the

authority to return an inmate to segregation housing. Instead, it was the ICA that determined inmate housing assignments.

### PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

> Wallens Ridge's established grievance procedure was available to Bacon regarding his excessive force claim against Curry, in that he was not prevented from using the procedure by the actions of prison staff.

### RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court enter judgment in favor of the defendant Curry based on the plaintiff's failure to exhaust his administrative remedies prior to filing suit.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by

the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

ENTERED: this 19th day of December, 2019.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE